UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dana Berkley, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Unilever United States, Inc.,<br><br>Defendant | 1:23-cv-674 (GLS/DJS)<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Unilever United States, Inc. ("Defendant") sells antiperspirant deodorant with moisturizers containing natural oil under the Dove Advanced Care brand ("Product").




2. The label statements include "¼ moisturizers with natural oil," "go fresh," a picture

of a fruit or vegetable with seeds, and identification of the active ingredient, "Aluminum Zirconium Tetrachlorohydrex GLY."

3. Sales of cosmetics based on natural ingredients are growing twice the rate of traditional cosmetics and exceed $50 billion per year.

4. Natural cosmetic ingredients refer to components that are derived from nature and subjected to minimal processing prior to being incorporated into a final product.

5. This excludes synthetic ingredients, such as those produced through chemical syntheses and other chemical reactions, and which are made through the use of chemical compounds, even if those are absent in the final ingredient.

6. One industry insider recommends that because the relevant statutes and regulations for cosmetic labeling "say nothing about transparency," companies can benefit by emphasizing their natural qualities, by "calling out" or highlighting certain ingredients or using images even "as simple as a leaf" to get customers.

7. These label call-outs include statements that a product is made "with" certain valued ingredients or components, which catch the consumers' attention.

8. This is because consumers understand front label cosmetic claims broadly, such that highlighting any natural ingredients makes them believe (1) the product only contains natural ingredients and (2) all of the ingredients of the type identified in the "call-out" are natural.

9. According to Nielsen, whether a cosmetic product contains natural instead of synthetic ingredients is very important to almost fifty percent of the public.

10. A recent academic publication concluded that consumers would pay at least ten percent more for cosmetics highlighting natural ingredients.

11. Over three-quarters of U.S. adults believe cosmetics with synthetic ingredients are

associated with detrimental impacts on health and the environment.

12. This is because such ingredients are highly processed with chemical additives and solvents, which can cause irritation, allergic reactions, and other harmful effects.

13. One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."

14. The statement of "¼ moisturizers with natural oil" is understood by consumers to mean the Product does not contain any synthetic ingredients.

15. The statement of "¼ moisturizers with natural oil" is understood by consumers to mean all the oil ingredients in the Product are natural.

16. The statement of "¼ moisturizers with natural oil" is understood by consumers to mean the amount of natural oil in the Product is significant or non-de minimis, for an antiperspirant deodorant.

17. The statement of "¼ moisturizers with natural oil" is understood by consumers to mean the added natural oils contribute to the Product's moisturizing effects, because it follows the statement of ¼ moisturizers.

18. Despite the front label emphasis on natural oils, the two oils, "Hydrogenated Castor Oil" and "Helianthus Annuus (Sunflower) Seed Oil," are the sixth and twelfth ingredients in order of predominance by weight.

**Active ingredient        Purpose**
Aluminum Zirconium Tetrachlorohydrex GLY (15.2%) … antiperspirant
**Inactive ingredients**
Stearyl Alcohol, C12-15 Alkyl Benzoate, Cyclopentasiloxane, Isopropyl Palmitate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Fragrance (Parfum), Dimethicone, Silica, Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT.

19.     The amount of any oils in the Product is de minimis, relative to its most predominant synthetic ingredients of "Stearyl Alcohol [and] C12-15 Alkyl Benzoate."

20.     Despite the emphasis on "natural oil," its most predominant oil of "Hydrogenated Castor Oil" is not natural, but synthetic.

21.     Hydrogenated castor oil consists of synthetic polyethylene glycol and castor oil.

22.     It is produced through ethoxylation, a chemical reaction in which ethylene oxide is added to the substrate of castor oil.

23.     Hydrogenated castor oil is added not for moisturizing, but because it is a surfactant, which lowers the surface tension between two substances.

24.     Though the second most predominant oil, "Helianthus Annuus (Sunflower) Seed Oil," is produced from sunflower seeds, it is not a natural ingredient.

25.     To obtain oil from sunflower seeds involves seed preparation, mechanical and solvent extraction and chemical reactions from the ground oilcakes or expanded material known as "collets."

26.     The solvent used to extract this oil is n-hexane, an industrial chemical obtained from petroleum ("petrochemical") through fractional distillation.

27. N-hexane contains structural isomers and chemicals, such as methyl pentane and methyl cyclopentane, which are synthetic compounds.

28. N-hexane is recognized by public health authorities as a common skin irritant, which can cause redness, blistering and superficial burns.

29. Medical authorities advise that anyone who may have come into contact with n-hexane should immediately seek medical advice.

30. Disposal of n-hexane causes environmental damage to the air and water sources.

31. It is misleading to promote the Product as made with natural oils because even though both oils come from natural sources, obtaining them requires chemical reactions and the use of petrochemicals.

32. Consumers are unaware that the Product's oils are produced through chemical reactions, using chemical compounds, and/or are synthetic ingredients.

33. Since one of the reasons consumers prefer natural ingredients is due to the negative health and environmental effects of synthetic ingredients, it is misleading to highlight "natural" oils made with synthetic chemical solvents known to have negative health and environmental effects.

## Jurisdiction and Venue

34. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

36. Plaintiff is a citizen of New York.

37. Defendant is a citizen of Delaware and New Jersey.

38. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years from thousands of locations including drug stores, convenience stores, warehouse club stores, grocery stores, big box stores, and/or online, across the States covered by the proposed classes.

39. Venue is in this District because Plaintiff resides in Schenectady County and a substantial part of the events or omissions giving rise to these claims occurred in Schenectady County, including the purchase and/or use of the Product, awareness and/or experiences with the issues described here and became aware the representations were false and/or misleading.

Parties

40. Plaintiff Dana Berkley is a citizen of Schenectady, New York, Schenectady County.

41. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in New Jersey.

42. Defendant is the world's largest consumer packaged goods company, owning iconic and trusted brands like Dove, which sells cosmetic and personal care products.

43. Plaintiff read the Product representations on the front label and expected (1) "¼ moisturizers with natural oil" with a picture of a fruit or vegetable with seeds meant all its ingredients were natural, (2) all or at least most of the oils were natural, (3) the oils were present in non-de minimis amounts and (4) the oils contributed to its moisturizing effects.

44. Plaintiff is like the large majority of Americans who understand claims related to the word natural broadly, especially when used to describe a product's components.

45. Plaintiff is like the large majority of Americans who seek to avoid synthetic ingredients in cosmetics due to their possible negative effects on health, safety and the environment.

46. Plaintiff purchased the Product at drug stores, convenience stores, warehouse club stores, grocery stores, big box stores, and/or online in Schenectady County between July 2020 and May 2023, and/or among other times.

47. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $5.99 per 2.6 oz, excluding tax and sales.

48. Plaintiff bought the Product at or exceeding the above-referenced price.

49. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

50. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

51. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

## Class Allegations

52. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **New York Class:** All persons in the State of New York who purchased the Product within the statutes of limitations for each cause of action alleged.

53. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

54. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

55. Plaintiff is an adequate representative because her interests do not conflict with other members.

56. No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

57. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

58. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Plaintiff believed the Product contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients.

61. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

62. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

63. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients.

64. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

65. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

66. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients.

67. Defendant's representations affirmed and promised that it contained only natural ingredients, the highlighted ingredients were natural, and that it contained a non-de minimis amount of the highlighted ingredients.

68. Defendant described the Product so Plaintiff believed that it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

69. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

70. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its established Dove line of deodorants.

71. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

72. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

73. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums and/or its website.

74. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

75. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients.

76. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Fraud</u>

77. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural ingredients, the highlighted ingredients were natural, the oils contributed to its moisturizing effects and that it contained a non-de minimis amount of the highlighted ingredients.

78. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

79. Defendant knew of the issues described here yet did not address them.

80. Defendant's fraudulent intent is evinced by its knowledge that the Product was not

consistent with its representations.

## Unjust Enrichment

81. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated: June 6, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com